USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/27/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MSP RECOVERY CLAIMS, SERIES LLC,

            Plaintiff,

-against-

ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,

            Defendant.

1:22-cv-6684 (MKV)

**OPINION AND ORDER
GRANTING
MOTION TO DISMISS**

---

MARY KAY VYSKOCIL, United States District Judge:

      This case is one of many lawsuits brought by Plaintiff MSP Recovery Claims, Series LLC ("MSP Recovery") under a statutory scheme involving the coordination of benefits between the federal Medicare program and private insurers. The Medicare Secondary Payer Act (the "Act"), 42 U.S.C. § 1395y, makes Medicare—or, as in this case, a Medicare Advantage Organization ("MAO") that provides benefits to a Medicare recipient—the "secondary payer" for certain medical expenses where a private insurer is demonstrated to be the "primary payer" responsible for the recipient's medical expenses. The Act further creates a cause of action for double damages where the primary plan fails either to pay in the first instance or to reimburse a payment advanced by the secondary payer.

      MSP Recovery is in the business of purchasing claims for recovery under the Act from MAOs and suing alleged primary payers. MSP Recovery alleges in this action that it was assigned an unspecified number of claims from a particular MAO, referred to as "Emblem." MSP Recovery contends that Defendant Endurance American Specialty Insurance Company ("Endurance") was the primary payer responsible for "an estimated thousands" of unspecified medical expenses that Emblem allegedly paid for an unspecified number of Emblem enrollees.

1

Endurance moves to dismiss for lack of standing and failure to state a claim [ECF No. 34]. For the reasons set forth below, that motion is GRANTED.

## I. BACKGROUND[1]

### A. Statutory Background

#### i. The Medicare Second Payer Act

Medicare is a government health insurance program that provides coverage for individuals who are 65 or older and for disabled individuals. For a number of years, Medicare "acted as the first payer for many medical services, regardless of whether a Medicare beneficiary was also covered under another insurance plan." *Hereford II*, 66 F.4th at 79–80 (quoting *Marietta Memorial Hospital Employee Health Benefit Plan v. DaVita Inc.*, 596 U.S. 880, 882 (2022)). Congress then enacted the Medicare Secondary Payer Act ("Act") to reduce the program's costs to the government. *See id*. at 80 (citing Medicare and Medicaid Amendments of 1980, § 953, 94 Stat. 2647 (codified as amended at 42 U.S.C. § 1395y)).

The Act made Medicare "a 'secondary payer' for certain medical services in relation to a beneficiary's private insurance plan." *Id.* (quoting 42 U.S.C. § 1395y(b)(2)(A)). Indeed, under the Act, Medicare may not pay for "any item or service" if "payment has been made, or can reasonably be expected to be made" by a "primary plan."[2] 42 U.S.C. § 1395y(b)(2)(A). Medicare may, however, make a conditional payment, with the expectation of being reimbursed, if the primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(A).

---

[1] The facts are taken from the Amended Complaint [ECF No. 30 ("AC")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true."). The statutory background is taken from the Second Circuit's decision in *MSP Recovery Claims, Series LLC v. Hereford Insurance Company*, 66 F. 4th 77 (2nd Cir. 2023) ("*Hereford II*").

[2] A "primary plan" includes "a group health plan or large group health plan," "a workmen's compensation law or plan, an automobile or liability insurance policy or plan . . . or no-fault insurance." 42 U.S.C. § 1395y(b)(2)(A).

When Medicare makes a conditional payment under the MSP Act, the primary plan may still be held responsible for the payment. *Hereford II*, 66 F.4th at 80. Specifically, if "it is later demonstrated that a primary plan has or had a responsibility to make payment with respect to [the] item or service,' the primary plan . . . must reimburse Medicare." *Id.* (brackets omitted) (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)). The Act creates a "private cause of action for double damages" if a primary plan fails to provide "'reimbursement.'" *Id.* (quoting 42 U.S.C. § 1395y(b)(3)(A)).

ii. **The Medicare Advantage Program**

Congress later created the Medicare Advantage Program. It allows Medicare beneficiaries who enroll in the Program "to receive their health care benefits from certain private insurers called Medicare Advantage Organizations" or "MAOs." *Id.* at 81 (citing 42 U.S.C. §§ 1395w-21–29). Pertinent here, the Medicare Advantage Program adopts the Act's secondary payer system. *See id.* (citing 42 § 1395w-22(a)(4)). In this context, the MAO, standing in for Medicare, is the secondary payer. *See id.* As such, the MAO may conditionally pay for an enrollee's "medical services in expectation of reimbursement by the primary payer." *Id.* "When a primary plan is ultimately determined to be responsible for a cost but fails to reimburse" the MAO, "the MAO may sue the primary plan for [double] damages." *Id.*; *see Aetna Life 4 Insurance Company v. Big Y Foods, Inc.*, 52 F. 4th 66, 73–75 (2nd Cir. 2022).

iii. **The Section 111 Reporting Requirement**

The Act, in a provision known as "Section 111," requires primary plans to report claims to the Centers for Medicare and Medicaid Services ("CMS") within the Department of Health and Human Services. *Hereford II*, 66 F.4th at 81. The reporting requirement allows CMS to "make an appropriate determination concerning coordination of benefits, including any applicable recovery claim." 42 U.S.C. § 1395y(b)(8)(B)(ii). To facilitate that determination, Section 111 requires a

3

primary plan to submit certain information "after the claim is resolved through a settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability)." 42 U.S.C. § 1359y(b)(8)(C).

### B. Factual Background

Plaintiff MSP Recovery is a Delaware firm that exists to bring claims for recovery that are assigned to it "from third parties, including MAOs." AC ¶¶ 14–17; *see Hereford II*, 66 F.4th at 82 (MSP Recovery "is a litigation . . . firm" that owns and pursues claims "arising under" Medicare and assigned to MSP Recovery by health insurance companies. "MSP is not itself an MAO, but its assignors are."). MSP Recovery alleges that an MAO, Emblem Health Services Company, LLC, Group Health Incorporated, and Health Insurance Plan of Greater New York (collectively, "Emblem"), assigned to MSP Recovery a series of claims for recovery under the Medicare Secondary Payer Act. *See* AC ¶¶ 45, 46.

Specifically, MSP Recovery alleges that it entered into an agreement with MAO Emblem in 2018 (the "Emblem Assignment"), pursuant to which Emblem assigned to MSP Recovery "all rights and claims against primary payers" for "a designated series of claims." AC ¶ 46. The Emblem Assignment "excluded" claims "that could be asserted against Emblem's members, enrollees and/or contracted providers" and that "as of March 20, 2018, (the Effective Date of the agreement) had been assigned to and/or were being pursued by other recovery vendors." AC ¶ 48 (brackets and internal quotation marks omitted).[3]

The Amended Complaint is replete with general commentary about the importance of the statutory scheme outlined above and the problem of noncompliant primary payers. *See* AC ¶¶ 1–12. MSP Recovery sounds the alarm about looming "Medicare insolvency." AC ¶ 2. It opines,

---

[3] Although the Amended Complaint purports to quote the Emblem Assignment, that document is not attached to the Amended Complaint, was not attached to the Original Complaint, and is not otherwise in the record.

based on its "years of investigation," about general "strategies adopted by insurers that have contributed to the depletion of Medicare's trust funds by enabling insurers to evade their primary payer obligations." AC ¶ 9. MSP Recovery broadly asserts that "insurers *like* Endurance . . . . harm Medicare and MOAs across the country." AC ¶ 11 (emphasis added).

The *factual* allegations against the defendant, on the other hand, are more truncated. In particular, MSP Recovery generally alleges that Defendant "Endurance is an insurer who issues liability and no-fault policies." AC ¶ 35. While asserting that Endurance failed to reimburse Emblem for an "estimated thousands of conditional payments," AC ¶ 56, MSP Recovery offers allegations about only one "representative" example of a claim involving the alleged Medicare beneficiary "N.B." AC ¶¶ 56, 58.

Specifically, MSP Recovery alleges that, in September 2015, "N.B. was injured in an incident that involved a fall in Bronx County, New York." AC ¶ 58. According to MSP Recovery, "N.B. suffered injuries to her neck and back." AC ¶ 60. She "received treatment related to those injuries . . . starting . . . the day after the accident." AC ¶ 60.

"At that time," N.B. was "enrolled in . . . Emblem's Medicare Advantage Plan." AC ¶ 58. MSP Recovery alleges that "N.B.'s medical providers billed Emblem $121,254.92 for the accident-related medical expenses, of which Emblem paid $38,920.92." AC ¶ 62.

MSP Recovery further alleges that Defendant "Endurance's insured . . . owned the property on which N.B. fell." AC ¶ 59. Important to the analysis in this case, MSP Recovery alleges that "Endurance indemnified its insured . . . and made payments pursuant to a settlement with N.B." AC ¶ 64. MSP Recovery further asserts its conclusions that "[b]y virtue of entering into that settlement and obtaining a release of all claims, Endurance became a primary payer responsible for payment and/or reimbursement of N.B.'s accident-related medical expenses." AC ¶ 64.

5

MSP Recovery alleges that, "[p]rior to the settlement," Endurance reported "information regarding the accident" to CMS pursuant to Section 111. AC ¶ 65. According to MSP Recovery, Endurance did not later report the settlement to CMS, as MSP Recovery contends Endurance was required to do by Section 111. AC ¶ 69. MSP Recovery, however, does not offer any factual allegations about the scope of Endurance's coverage of its alleged insured, the claims that were allegedly settled, the parties to the alleged settlement, or what Endurance allegedly paid.

MSP Recovery asserts that it "is entitled to collect double damages" from Endurance both for "N.B.'s accident-related medical expenses and for all other instances within the scope of the [Emblem] Assignment." AC ¶ 74.

### C. Procedural History

MSP Recovery initiated this case by filing the Original Complaint [ECF No. 1 ("Cmpl.")]. The Original Complaint attached an exhibit that it described as a "list of N.B.'s diagnosis codes" and "accident-related medical expenses." Cmpl. ¶ 35 [ECF No. 1-2].

Thereafter, Endurance filed a pre-motion letter requesting leave to file a motion to dismiss this case for lack of standing and failure to state a claim [ECF No. 25]. MSP Recovery then filed a "notice of its intention to amend the [Original] Complaint" [ECF No. 26]. After months of subsequent inaction by MSP Recovery, the Court issued an Order To Show Cause why the case should not be dismissed for failure to prosecute [ECF No. 27]. MSP Recovery responded to that Order To Show Cause [ECF No. 28], and the Court issued an Order setting a schedule for MSP Recovery to amend its pleading and, thereafter, for the parties to brief Endurance's contemplated motion to dismiss [ECF No. 29]. In that Order, the Court specifically warned MSP Recovery that this would be its "last opportunity to amend in response to any argument raised" by Endurance in the pre-motion letter [ECF No. 29].

MSP Recovery subsequently filed the Amended Complaint [ECF No. 30 ("AC")] which is its operative pleading.[4]  It does not attach any exhibits.  In the Amended Complaint, MSP Recovery asserts two claims for relief.  First, it asserts "a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A)," seeking "double damages" for an unspecified number of unreimbursed payments by Emblem.  AC ¶¶ 77, 86.  MSP Recovery broadly asserts that Endurance is "the primary payer for Emblem enrollees' accident-related medical expenses."  AC ¶¶ 78, 80.  Second, MSP Recovery seeks a declaratory judgment that Endurance is a primary payer with a duty to reimburse Emblem for alleged conditional payments and "what amounts are due and owing by Endurance to Emblem, and therefore [MSP Recovery], pursuant to the Emblem Assignment."  AC ¶ 92.

Endurance filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim [ECF Nos. 33, 34 ("Def. Mem.")].  Endurance contends that MSP Recovery and affiliated entities file numerous "cookie-cutter actions" throughout the country and "attempt to sort out for the first time *in the lawsuit* whether any claims actually exist."  Def. Mem. at 1–2 (emphasis in original).  Endurance stresses that courts in this District and elsewhere have dismissed similar complaints for lack of standing and failure to state a claim.  Def. Mem. at 2.  Endurance argues that, here, MSP Recovery: (1) fails to adequately allege a valid assignment of claims, *see id.* at 8; (2) fails to sufficiently allege that Emblem suffered an injury-in-fact in connection with N.B.'s alleged medical expenses, *see id.* at 11; (3) fails to allege any injury (or facts) in connection with the unspecified other payments within the alleged assignment, *see id.* at 13; and (4) fails to state a claim for declaratory judgment, *see id.* at 15.

MSP Recovery filed an opposition [ECF No. 38 ("Opp.")].  Endurance filed a reply brief

---

[4] "It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In Re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (citing *Harris v. City of New York*, 186 F. 3d 243, 249 (2d Cir. 1999)).

7

[ECF No. 41 ("Reply")].

## II. LEGAL STANDARDS

### A. Standing

Under Article III of the United States Constitution, federal court jurisdiction is limited to "the resolution of cases and controversies." *Carter v. Healthport Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)). This constitutional limitation requires a plaintiff have standing to assert a claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Alliance for Envt'l. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). As the party invoking jurisdiction, the plaintiff bears the burden of establishing standing. *Spokeo, Inc.*, 578 U.S. at 338. To establish standing, a plaintiff must demonstrate (i) an injury in fact, (ii) caused by the defendant (iii) that would be redressed by the requested judicial relief. *Food and Drug Administration v. All. For Hippocratic Med.*, 602 U.S. 367, 368 (2024) (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

To plead the first element of standing, an injury-in-fact, the plaintiff must allege an injury that is "concrete" and "particularized." *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F. 4th 276, 283 (2d Cir. 2023) (citing *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020)). The second element, causation, requires that the alleged injury be "fairly traceable to the challenged conduct of the defendant." *SM Kids, LLC v. Google LLC*, 963 F. 3d 206, 211 (2d Cir. 2020) (quoting *Spokeo, Inc.*, 578 U.S. at 338). The plaintiff must "alleg[e] facts that affirmatively and plausibly suggest" that it has standing. *Cortlandt St. Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 417 (2d Cir. 2015) (internal quotation marks and citation omitted).

### B. Failure To State a Claim

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is basic that a district court must "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor." *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). However, "that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) (internal quotation marks and citation omitted). Mere "conclusions" likewise "are not entitled to the assumption of truth." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 664).

### III. DISCUSSION

MSP Recovery and affiliated entities have filed versions of this case in this District, and in other federal courts across the country, seeking to recover from insurance companies that have allegedly failed to reimburse MAOs. However, many courts, including the Second Circuit, have concluded that MSP Recovery has failed to establish standing to pursue its claims. *See, e.g.*, *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77 (2d Cir. 2023) ("*Hereford II*"); *MSP Recovery Claims, Series LLC v. Hereford Insurance Company*, 20-cv-4778 (ER), 2022 WL 118387 (S.D.N.Y. Jan. 11, 2022) ("*Hereford I*"), *aff'd*, 66 F.4th 77; *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 20-cv-2102 (VEC), 2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021) ("*AIG*"); *MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, 18-cv-8036 (AT) ("*Technology Insurance*"), 2020 WL 91540 (S.D.N.Y. Jan. 8, 2020); *see also MSP Recovery Claims, Series 44, LLC v. Quincy Mut. Fire Ins. Co.*, 2023 WL 4107038 (D. Mass. June 21, 2023). While MSP

Recovery has refined some of its allegations in response to previous dismissals, the Amended Complaint still fails to establish standing in this case.

As explained below, MSP Recovery offers the Court no more than conclusory assertions that its "representative" claim and other, unspecified claims for recovery under the Medicare Secondary Payer Act fall within a valid assignment from its alleged assignor, Emblem, and that Emblem's alleged unreimbursed payment of N.B.'s medical expenses was *reimbursable by* the defendant, Endurance. These conclusory assertions are insufficient to plausibly allege that MSP Recovery has standing. *Cortlandt St. Recovery Corp.*, 790 F.3d at 417. As such, the Court must dismiss this case for lack of subject matter jurisdiction and does not reach the merits of whether MSP Recovery states a claim for relief.

### A. MSP Recovery Fails To Plausibly Allege a Valid Assignment.

MSP Recovery in in the business of purchasing from MAOs claims for recovery under the Medicare Secondary Payer Act and suing purported primary payer insurance companies for double damages. *See Hereford II*, 66 F.4th at 82. An "assignee of a claim has standing to assert the injury-in-fact suffered by the assignor." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000); *see Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d 110, 117 (2d Cir. 2002) ("[T]he assignee, obtaining the assignment in exchange for some consideration . . . stands in the assignor's stead with respect to both injury and remedy."). First, however, MSP Recovery must plausibly allege a valid assignment of the claims for recovery. *See AIG*, 2021 WL 1164091, at \*7; *Technology Insurance*, 2020 WL 91540, at \*4.

The Amended Complaint alleges that, pursuant to the Emblem Assignment executed in 2018, Emblem assigned to MSP Recovery "all rights and claims against primary payers" for "a designated series of claims." AC ¶ 46. Although the Amended Complaint purports to quote from

the agreement, the Emblem Assignment is not attached to the Amended Complaint. MSP Recovery itself alleges that the Emblem Assignment specifically "excluded" some claims. AC ¶ 48. In particular, the Emblem Assignment excluded claims that "could be asserted against Emblem's members, enrollees and/or contracted providers" and claims that "as of March 20, 2018, . . . had been assigned to and/or were being pursued by other recovery vendors." AC ¶ 48 (brackets and internal quotation marks omitted).

MSP Recovery contends that Emblem assigned to MSP Recovery the claim with respect to N.B., as well as the other, unspecified claims MSP Recovery wishes to pursue in this action. *See* AC ¶ 51; Opp. at 7–9. However, MSP Recovery offers only its conclusory assertion that it "seeks recovery only for claims Emblem assigned to [it]." AC ¶ 51. It offers no factual allegations from which the Court can infer that the claim with respect to N.B., let alone any other unspecified claim, in fact, falls within the Emblem Assignment and does not fall within the exclusions.

In other cases that MSP Recovery has filed in this District, it "filed the relevant assignment agreements." *AIG*, 2021 WL 1164091, at *8; *Technology Insurance*, 2020 WL 91540, at *3. In those cases, as in the Amended Complaint, MSP Recovery asserted that it sought recovery only for claims that fell "squarely" within valid assignments; however, the district courts' review of the assignment agreements revealed that MSP Recovery's assertion was "simply not correct." *AIG*, 2021 WL 1164091, at *8; *see Technology Insurance*, 2020 WL 91540, at *4.

Here, MSP Recovery omits the Emblem Assignment and asks the Court to accept its *ipse dixit*. The Court, however, is not required to afford MSP Recovery's "conclusion" about the validity of its assignment "the assumption of truth." *Whiteside*, 995 F.3d at 321. Nor does it make sense to do so here. As explained above, MSP Recovery offers *any* specific allegations only for the claim with respect to N.B. The Amended Complaint states that N.B.'s accident occurred in

11

2015.  AC ¶ 58.  The Emblem Assignment specifically excluded claims that had already been assigned to other recovery vendors by 2018, three years after N.B.'s alleged accident.  *See* AC ¶ 48.  MSP Recovery offers the Court nothing more than its own conclusion that N.B.'s claim does not fall within this exclusion.  Its conclusion is not enough.  *See Whiteside*, 995 F.3d at 321.  Moreover, since the Amended Complaint is totally devoid of factual allegations with respect to all other claims for which MSP Recovery seeks reimbursement pursuant to the Emblem Assignment, the Court obviously cannot infer that those claims do not fall within an exclusion.

MSP Recovery fails to allege a valid assignment of claims.  *See AIG*, 2021 WL 1164091, at *8; *Technology Insurance*, 2020 WL 91540, at *4.  As such, the Court concludes that MSP Recovery lacks standing to assert any injury Emblem might have suffered.  *See Vermont Agency of Natural Resources*, 529 U.S. at 773.  This conclusion alone is sufficient to dismiss this case for lack of subject matter jurisdiction.  *See Cortlandt St. Recovery Corp.*, 790 F.3d at 417.

The Court, nevertheless, explains that, even assuming a valid assignment, MSP Recovery also fails to plausibly allege the injury and causation required for standing.

### B.  MSP Recovery Fails To Allege Injury and Causation.

To establish standing, MSP Recovery must show that Emblem suffered a particularized injury-in-fact that was caused by Endurance.  *See All. for Hippocratic Med.*, 602 U.S. at 368.  In the context of an MAO, or its assignee, seeking to recover from an alleged primary payer, injury-in-fact and causation are "closely related."  *Hereford II*, 66 F.4th 77 at 85.  As the Second Circuit made clear in *Hereford II*, to establish standing in this case, MSP Recovery must plausibly allege that Emblem made a payment that was "*reimbursable by*" Endurance.  *Id*. at 85 (emphasis added).  MSP Recovery fails to carry this burden.

As an initial matter, the Amended Complaint may not even adequately allege that Emblem incurred reimbursable costs. Contrary to the impression MSP Recovery attempts to create in its pleading and briefs, not every payment by an MAO is reimbursable under the Medicare Secondary Payer Act. Sometimes the costs of medical services are "properly incurred by the MAO and [are] not reimbursable" by a private insurer. *AIG*, 2021 WL 1164091, at *6.

MSP Recovery contends that Emblem should have been reimbursed for the $38,920.92 that Emblem allegedly contributed to N.B.'s medical expenses. Opp. at 13. That payment, however, is only reimbursable if another private insurer had a responsibility to pay for those medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii)). As explained below, MSP Recovery fails to adequately allege that *Endurance* was responsible for the expenses that Emblem allegedly paid. However, assuming *arguendo*, that Endurance was responsible for medical *expenses arising out of N.B.'s alleged accident*, the allegations in the Amended Complaint still fall short. *See Hereford I*, 2022 WL 118387 at *4 (raising the issue whether MSP Recovery adequately alleged that certain "medical services were sufficiently connected to the same accident"). Specifically, MSP Recovery fails to provide any factual detail to connect Emblem's alleged payment for medical expenses to N.B.'s alleged *accident-related* injuries. *See* AC ¶ 64.

In several other cases, MSP Recovery has attached documents to its pleading in an effort to demonstrate that the assigning MAO had paid for *accident-related* medical expenses. Even so, in *Hereford I*, the district court ruled that MSP Recovery had failed to plausibly allege that the defendant was a primary payer responsible for reimbursing the MAO because "neither the [complaint] nor its exhibits allege[d] facts from which the Court [could] reasonably infer that the[] medical services were necessary *because of the accident*." *Hereford I*, 2022 WL 118387 at *10

13

(emphasis added). In *AIG*, the *exhibits* MSP Recovery provided were "barely" enough to satisfy the district court. *AIG*, 2021 WL 1164091 at *5.

Here, MSP Recovery has not made specific allegations or attached anything to its operative pleading to show that Emblem paid for medical expenses that were necessary because of N.B.'s accident-related injuries. Thus, MSP Recovery offers the Court only its bare assertion that Emblem's payment of $38,920.92 was for medical expenses for N.B.'s accident-related injuries. *See* AC ¶ 64. That conclusory assertion is not entitled to the same presumption of truth as factual allegations. *See Whiteside*, 995 F.3d at 321. Further, MSP Recovery's own more specific allegation that Emblem paid only a small fraction of N.B.'s alleged medical expenses casts doubt on MSP Recovery's conclusion that the payment Emblem made was a conditional payment, in anticipation of reimbursement, for accident-related expenses for which another insurer was responsible. *See AIG*, 2021 WL 1164091 at *5–6; *Hereford I*, 2022 WL 118387 at *10–11; *see also DPWN Holdings*, 747 F.3d at 152.

Accepting as true the assertion that Emblem paid for accident-related medical expenses, MSP Recovery still must plausibly allege that Endurance had a responsibility to reimburse Emblem. *See Hereford II*, 66 F. 4th at 85. As such, MSP Recovery must plausibly allege that Emblem was the primary payer for N.B.'s accident-related medical expenses. *See id*. For this proposition, MSP Recovery relies on Endurance allegedly (1) reporting a claim under Section 111 and (2) entering into a settlement. In *Hereford II*, the Second Circuit has expressly held that a report filed under Section 111 does not support an argument that an insurer is a primary payer for purposes of standing. *Hereford II*, 66 F.4th at 87.

Turning to the alleged settlement, MSP Recovery relies heavily on the Second Circuit's decision in *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66 (2d Cir. 2022), for the proposition

that "[b]y virtue of entering into that settlement and obtaining a release of all claims, Endurance became a primary payer responsible for payment and/or reimbursement of N.B.'s accident-related medical expenses," AC ¶ 64.  *See* Opp. at 11.  In *Big Y Foods*, the Second Circuit explained that "Clause (b)(2)(B)(ii) of the MSP Act states that a primary plan may be responsible for repayment when a settlement involves 'payment for items or services included in [the] claim against the primary plan.'" *Big Y Foods, Inc.*, 52 F.4th at 72 (quoting 42 U.S.C. § 1395y(b)(2)(B)(ii)).  In that case, which involved a motion for summary judgment, the Second Circuit stressed that the defendant, Big Y, did not dispute the facts that the individual who had been injured "filed a claim against Big Y seeking compensation" for medical expenses for that injury, "Big Y settled *that* claim with [her]," and "Big Y knew that [the plaintiff MAO] was asserting a lien against Big Y for [the MAO's] payment of [the individual's injury-related] medical expenses."  *Id.* at 76 (emphasis added).  Here, by contrast, MSP Recovery fails to allege similar facts.

Indeed, MSP Recovery fails to allege any facts to connect Emblem's alleged payment of medical expenses with Endurance's alleged settlement payment.  In its Amended Complaint, MSP Recovery alleges simply that Endurance "made payments pursuant to a settlement."  AC ¶ 64.  However, MSP Recovery fails to offer any factual detail whatsoever about the alleged settlement.  MSP Recovery fails even to allege that Endurance paid for injury-related medical expenses pursuant to the settlement.  *See* AC ¶ 64.  Moreover, even drawing all reasonable inferences in favor of MSP Recovery, the Court cannot reasonably infer that Endurance settled a claim for injury-related medical expenses because MSP Recovery offers no allegations whatsoever about the scope of Endurance's alleged coverage for its insured.  The bare allegation of the existence of a settlement is not sufficient to allege that Endurance is responsible for reimbursing Emblem for all of N.B.'s accident-related injuries.

This case is not similar to *Big Y Foods*, factually or procedurally. Rather, this case is similar to other cases in which district courts have dismissed for lack of standing, notwithstanding MSP's allegation that the defendant entered into a settlement agreement. For example, in *AIG*, the district court explained that MSP had failed to establish standing because it had "not adequately alleged that the medical care provided to the exemplar patients was for injuries that would have been covered by the insurance policies or settlement agreements allegedly issued or entered into by Defendants." *AIG*, 2021 WL 1164091, at *12. Similarly, in *MSP Recovery Claims, Series 44, LLC v. Quincy Mut. Fire Ins. Co.*, 2023 WL 4107038 (D. Mass. June 21, 2023), the district court ruled that MSP lacked standing because its "complaint [was] silent as to any allegations from which the Court could infer that [the exemplar beneficiaries'] injuries would have been covered by the insurance policies or settlement agreements allegedly issued or entered into by Defendants." *Quincy Mut. Fire Ins. Co.*, 2023 WL 4107038, at *15. The same defects are present here. *See also MAO-MSO Recovery II, LLC v. Nationwide Mut. Ins. Co.*, 2018 WL 4941111, at *3 n.3 (S.D. Ohio Feb. 28, 2018) (plaintiff "failed to plead" sufficient facts about "the relationship between the payments made by the MAO and the contents of the settlement agreements").

Accordingly, MSP Recovery fails to allege an injury-in-fact and causation, both of which are necessary for Article III standing, for the sole "representative" claim it identifies. *See Hereford II*, 66 F.4th 77 at 89; *see also Spokeo, Inc.*, 578 U.S. at 338. Further, MSP Recovery obviously fails to establish standing to seek relief for the unspecified "other instances within the scope of the [Emblem] Assignment" in which, MSP Recovery speculates, Endurance failed to make required payments. AC ¶ 74. As such, because the Court concludes that MSP Recovery lacks Article III standing, the Court must dismiss this case without prejudice for lack of subject matter jurisdiction. *See Cortlandt St. Recovery Corp.*, 790 F.3d at 416–17.

As explained above, the Court previously warned MSP Recovery that it would not have another opportunity to amend its pleading to cure any defect identified in Endurance's pre-motion letter [ECF No. 29]. Endurance had argued in its pre-motion letter than MSP Recovery failed to adequately allege standing [ECF No. 25]. The Amended Complaint wholly fails to cure the previously-identified deficiencies. Accordingly, the Court denies MSP Recovery leave to amend its pleading further.

Moreover, because the Court lacks subject matter jurisdiction, the Court does not reach the merits of whether MSP Recovery states a claim.

## IV.    CONCLUSION

For the reasons stated above, the motion to dismiss is GRANTED, and the case is dismissed without prejudice.

The Clerk of Court respectfully is direct to terminate the motion at docket entry 34 and to close this case.

**SO ORDERED.**

**Date:  September 27, 2024**　　　　　　　　　　　　**MARY KAY VYSKOCIL**
　　　　**New York, NY**　　　　　　　　　　　　　　**United States District Judge**